IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSSION, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ERIC M. MARTIN, | : | CIVIL ACTION NO. |
| | : | 1:12-cv-2922-AT |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| ROBIN A. MARTIN, | : | |
| | : | |
| | : | |
| Relief Defendant. | : | |

**ORDER**

### I.   INTRODUCTION

Plaintiff, Securities and Exchange Commission ("Plaintiff" or the "SEC"), brought this civil enforcement action against Defendant Eric M. Martin ("Defendant"), and Relief Defendant Robin A. Martin, seeking disgorgement, prejudgment interest and civil penalties[1] for violations of Section 17(a) of the

---

[1]      On March 19, 2019, the Court conducted a telephonic status conference with all parties. During this conference, the SEC formally withdrew its request for civil penalties due to an internal change in policy. *See* March 19, 2019 Transcript of Telephonic Conference ("Tr.") at 3,

Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), as well as the applicable rules promulgated thereunder. *See generally* Second Amended Complaint ("SAC") (Doc. 31).

Presently before the Court is the SEC's Amended Motion for Disgorgement and Prejudgment Interest against Defendant Eric M. Martin and for Disgorgement of Unjust Enrichment by Relief Defendant Robin A. Martin. *See* Notice of Motion [Doc. 42]. For the reasons that follow, Plaintiff's motion is **GRANTED**, **in part**.

## II. BACKGROUND

### A. Procedural Background

On August 23, 2012, the SEC brought the instant civil enforcement action against Defendant alleging violations arising under the Securities Act, the Exchange Act as well as applicable rules promulgated thereunder. *See generally* (Doc. 1); SAC. Thereafter, on August 22, 2013, Defendant entered into a Consent for an Order of Permanent Injunction and Officer and Director Bar.[2] (Doc. 32) (the "Consent").[3] As is relevant here, the Consent stated, in part, as follows:

---

13; *see generally* (Doc. 53) (Minute Entry for March 19, 2019 Conference). In light of the SEC's withdrawal of its request for civil penalties, the Court declines to address this particular remedy in the first instance.

[2] While the document was executed on August 22, 2013, it was not filed on the Court's electronic docket until September 5, 2013.

[3] Defendant entered into this Consent following the entry of a guilty plea in an underlying criminal case relating to certain actions and conduct as contained in the SEC's Complaint filed in the instant action. *See United States v. Martin*, No. 1:12-CR-00364 (N.D. Ga.).

> Defendant hereby consents to the entry of the *Order of Permanent Injunction and Officer and Director Bar as to Defendant Eric M. Martin*. . . .
>
> Defendant hereby agrees, that upon motion of the Commission, the Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1] and, if so, the amount(s) of the disgorgement and/or civil penalty . . . [and] that if disgorgement is ordered, Defendant shall pay prejudgment interest thereon calculated from July 28, 2010, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax. . . .
>
> Defendant further agrees that in connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the complaint; (b) Defendant may not challenge the validity of this Consent or the Order; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as deemed true by the Court. . . .
>
> Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.
>
> Defendant agrees that this Consent shall be incorporated into the Order with the same force and effect as if fully set forth therein.

Consent at 1-4.  Subsequently, on September 11, 2013, the Court entered an Order of Permanent Injunction and Officer and Director Bar as to Defendant Eric M. Martin.  (Doc. 33) (the "Inj. Order").  As is relevant here, the Order incorporated by reference all agreements as set forth in the Consent while also stating that

> Defendant shall pay disgorgement of ill-gotten gains (which includes not only profits gained, but also losses avoided), prejudgment interest thereon, and a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission. Prejudgment interest thereon calculated from July 28, 2010, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax. . . .
>
> In connection with the Commission's motion for disgorgement and/or civil penalties . . . (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the complaint; (b) Defendant may not challenge the validity of the Consent or this Order; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as deemed true by the Court. . . .

*See generally* Inj. Order.

### B. Factual Background

In light of both the Court's and the parties' familiarity with the underlying facts giving rise to this action and because Defendant, by executing the Consent, has agreed that for purposes of adjudicating the instant motion "the allegations of the Complaint shall be accepted as and deemed true by the Court," Consent at 3; Inj. Order at 5-6, the Court declines to set forth the salient facts here. Rather, the Court respectfully refers the reader to the SAC for a detailed explication of the facts giving rise to this enforcement action as well as the instant motion. To the extent specific facts are relevant and material to the Court's determination of the instant motion, such facts will be set forth as necessary in the course of the Court's analysis.

### III.   DISCUSSION

#### A. Disgorgement

##### 1. Applicable Law

"Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996); *accord S.E.C. v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014) ("Disgorgement is an equitable remedy intended to prevent unjust enrichment."); *S.E.C. v. Huff*, 758 F. Supp. 2d 1288, 1358 (S.D. Fla. 2010), *aff'd*, 455 F. App'x 882 (11th Cir. 2012) ("Disgorgement is an equitable remedy that anticipates depriving 'the wrongdoer of his ill-gotten gain.'") (quoting *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 n. 6 & 735 (11th Cir. 2005)).  Thus, the equitable remedy of disgorgement constitutes "a method of forcing a defendant to give up the amount by which he was unjustly enriched." *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 372 (2d Cir. 2011).  Indeed, "[t]he paramount purpose of enforcing the prohibition against insider trading by ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing." *S.E.C. v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987); *see U.S. Sec. & Exch. Comm'n v. Hall*, No. 17-13897, 2019 WL 103892, at *4 (11th Cir. Jan. 4, 2019) ("Generally, disgorgement is a form of '[r]estitution measured by the defendant's wrongful gain.' Disgorgement requires that the defendant give up 'those gains . . . properly attributable to the defendant's interference with the

claimant's legally protected rights.'") (quoting *Kokesh v. SEC*, 137 S. Ct. 1635, 1640, 198 L. Ed. 2d 86 (2017) (alteration in original)).   By forcing those individuals and entities who violate the securities laws to return their ill-gotten gains, disgorgement likewise "has the effect of deterring subsequent fraud." *S.E.C. v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006); *First Jersey*, 101 F.3d at 1474.   Logically then, "[t]he deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits." *Sec. & Exch. Comm'n v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972); *Kokesh*, 137 S. Ct. at 1643 (same).

"In order to be entitled to disgorgement, the SEC needs to produce only a reasonable approximation of the defendant's ill-gotten gains, and '[e]xactitude is not a requirement.'" *Monterosso*, 756 F.3d at 1337 (internal citation omitted). Rather, "[s]o long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004) (alteration in original). "Once the SEC has produced a reasonable approximation of the defendant's unlawfully acquired assets, the burden shifts to the defendant to demonstrate the SEC's estimate is not reasonable." *Id.*; *see S.E.C. v. Rosenfeld*, No. 97 CIV.1467, 2001 WL 118612, at *2 (S.D.N.Y. Jan. 9, 2001) ("[O]once the Commission shows the existence of a fraudulent scheme in violation of federal securities laws, the burden shifts to the defendant to 'demonstrat[e] that he received less than the full amount allegedly misappropriated and sought to be

6

disgorged.'") (quoting *S.E.C. v. Benson,* 657 F. Supp. 1122, 1133 (S.D.N.Y. 1987));

*S.E.C. v. Grossman*, 87 Civ. 1031, 1997 WL 231167, at *8 (S.D.N.Y. May 6, 1997)

("The SEC bears the burden of persuasion that its proposed disgorgement figure

reasonably approximates the amount of unjust enrichment . . . once the SEC has

established that the proposed amount is reasonable, the burden shifts to the

defendant to demonstrate that the amount requested is not a reasonable

approximation of the unlawfully obtained profits."), *aff'd, in part, vacated, in

part*, 173 F.3d 846 (2d Cir. 1999).

### 2. Analysis

As none of the facts underlying this enforcement action are in dispute for

purposes of this motion, *see* Consent at 3 (stating that "allegations of the

Complaint shall be accepted as and deemed true by the Court"); Inj. Order at 5-6

(same) and as Defendant, by virtue of the Consent, has also "waive[d] the entry of

findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of

Civil Procedure," *see* Consent at 4; Inj. Order at 1, the Court need only satisfy

itself that the SEC has put forth a "reasonable approximation of the defendant's

ill-gotten gains." *Monterosso*, 756 F.3d at 1337. In the event the SEC meets its

burden, disgorgement, in the amount proposed by the SEC, shall be awarded

unless Defendant comes forward with evidence "demonstrat[ing] [that] the SEC's

estimate is not reasonable." *Id*.

The SEC seeks an award of disgorgement in the amount of $261,911,18.

*See* (Doc. 42). In support of this request, the SEC has submitted the Declaration

of Pat Huddleston II, Senior Trial Counsel with the SEC, as well as a chart prepared from "the brokerage records collected in the investigation" which, according to Huddleston, illustrates "the insider trading transactions that occurred within five years of the filing of this enforcement action, the accounts in which they were made, and the profits gained or losses avoided attributable to those trades." *See* July 13, 2018 Declaration of Pat Huddleston II ("Huddleston Decl.") ¶ 5; *id.* Exhibit ("Ex.") A (Disgorgement Calculation Chart).   The Court has reviewed the underlying Disgorgement Calculation Chart (the "Chart") and, upon doing so, finds that it substantiates the SEC's disgorgement figure of $261,911.18.   Huddleston Decl., Ex. A.   In reviewing the Chart, it is clear that from January 29, 2008 through July 28, 2010, Defendant executed a total of 230 trades comprising 117,224 shares of Carter's Inc. stock resulting in a overall gain of $261,911.18.   *See id.*  Of the 117,224 shares traded, a total of 57,700 or 49.22% were bought or sold from joint accounts held by Defendant and Relief Defendant while a total of 56,024 or 47.79% were bought or sold from Relief Defendant's solely owned accounts.   Significantly, only 3,500 shares or 2.99% of all shares traded came from Defendant's solely owned accounts.   *See id.*  Moreover, the SEC's Chart clearly sets forth salient information for each of the 230 trades executed by Defendant during the relevant time period.   In short, the Court finds the Chart to constitute a reasonable approximation of Defendant's ill-gotten gains.

In light of the Court's finding, the SEC is entitled to an award of disgorgement totaling $261,911.18 unless Defendant proffers evidence that the SEC's approximation is not reasonable. *Monterosso*, 756 F.3d at 1337. In that regard, other than interposing argument via his brief in opposition, Defendant has not presented this Court with any countervailing evidence which calls into doubt the accuracy or reasonableness of the SEC's disgorgement calculation.[4] Instead, Defendant takes the position under the Supreme Court's recent decision in *Kokesh v. S.E.C.*, that disgorgement must now be characterized as "essentially a penalty" in all contexts, stating that "[w]ithout benefit of any subsequent application of th[e] principles [set forth in *Kokesh*], it is not clear that courts have the authority to order disgorgement as an implied right of action in SEC enforcement proceedings." Defendant Eric Martin's Response to Plaintiff's Amended Motion for Disgorgement, Prejudgment Interest, and Civil Penalties ("Def.'s Opp'n") at 2. Defendant's argument misses the mark.

In *Kokesh*, the Supreme Court addressed an extremely narrow question— "whether disgorgement claims in SEC proceedings are subject to the 5-year limitations period of [28 U.S.C.] § 2462.[5] *Kokesh*, 137 S. Ct. at 1641. In concluding that disgorgement claims, in the SEC enforcement context, are

---

[4] It is worth pointing out that Defendant, for his part, does not contest "a judgment totaling $261,911.18" which he apparently concedes "represent[s] 100% of his ill-gotten gains." Def.'s Opp'n at 1.

[5] 28 U.S.C. Section 2462 states that "[e]xcept as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon." 28 U.S.C. § 2462.

subject to Section 2462's 5-year limitations period, the Supreme Court determined that "SEC disgorgement constitutes a penalty within the meaning of § 2462." *Id.* at 1643; *see id.* at 1639 ("Disgorgement in the securities-enforcement context is a 'penalty' within the meaning of § 2462, and so disgorgement actions must be commenced within five years of the date the claim accrues."). While at first blush it might seem that the Supreme Court in *Kokesh* has single-handedly upended years of prior precedent by characterizing disgorgement as a "penalty" as opposed to an equitable form of restitution, the decision, upon closer examination, does not create a major sea change in disgorgement jurisprudence. Indeed, in a footnote, the Court in *Kokesh* stressed that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context. The sole question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period." *Id.* at 1642 n. 3. In addition, each time the Court restated its holding (*i.e.*, that disgorgement is a penalty) it did so with the significant qualification that its conclusion was limited to the interpretation of disgorgement as a penalty only within the meaning of Section 2462. *See id.* at 1639, 1643, 1645. Moreover, the sole instance where the Court stated that "SEC disgorgement constitutes a penalty"—full stop—was the instance in which it incorporated the qualifying footnote as set forth above. Had the Court sought to upend years of settled disgorgement principles it is unlikely it would

have taken pains to repeatedly cabin its holding while also including an explicit cautionary footnote to lower courts and practitioners alike.

Likewise, other courts which have addressed *Kokesh* have not been persuaded that it disturbs settled precedent concerning disgorgement. *See, e.g.*, *Sec. & Exch. Comm'n v. Revolutions Med. Corp.*, No. 1:12-CV-3298, 2018 WL 2057357, at *3 (N.D. Ga. Mar. 16, 2018) (recognizing that "nothing in <u>Kokesh</u> has affected the SEC's legal authority to seek disgorgement" and concluding that "[b]ecause the Eleventh Circuit has expressly recognized disgorgement as a proper remedy in SEC enforcement actions, the Court declines to find that <u>Kokesh</u> has undermined that authority.") (citing cases); *United States Sec. & Exch. Comm'n v. Ahmed*, 343 F. Supp. 3d 16, 27 (D. Conn. 2018) (surveying the legal landscape post-*Kokesh* and concluding that "nothing in *Kokesh* disturbed Second Circuit precedent that disgorgement is a proper equitable remedy."); *United States v. Rapower-3, LLC*, 294 F. Supp. 3d 1238, 1241–42 (D. Utah 2018), *adhered to,* No. 2-15-CV-00828-DN, 2018 WL 1573585 (D. Utah Mar. 13, 2018) ("*Kokesh v. SEC* decided whether disgorgement is a penalty for the purpose of applying a statute of limitation. *Kokesh* is a statutory analysis of terms.  The Supreme Court does not state in *Kokesh* that its ruling determines that disgorgement is a penalty in all contexts. And, *Kokesh* certainly did not discuss or overrule the long standing precedent of categorizing disgorgement as an equitable remedy."); *Sec. & Exch. Comm'n v. Jammin Java Corp.*, No. 2:15 CV 08921, 2017 WL 4286180, at *3 (C.D. Cal. Sept. 14, 2017) ("To hold that

disgorgement operates as a penalty under § 2462 is to define 'penalty' in that statutory context, *not to characterize 'disgorgement*.' As it presently stands, *Kokesh* is best seen as a decision clarifying the statutory scope of § 2462, rather than one redefining the essential attributes of disgorgement.") (emphasis in original); *Sec. & Exch. Comm'n v. Brooks*, No. 07-61526-CIV, 2017 WL 3315137, at *8 (S.D. Fla. Aug. 3, 2017) ("*Kokesh*'s holding cannot be plucked from the statutory context that gives it force. *Kokesh* is about statutes of limitations, and its holding is embedded in this context.").

Under the sheer weight of this persuasive authority, Defendant's argument that *Kokesh* has eviscerated the applicability of disgorgement in the context of an SEC enforcement action or that disgorgement, even if available, constitutes a penalty as opposed to equitable restitution of a defendant's ill-gotten gains, rings hollow. As a result, Defendant's entire argument unravels under the force of its own faulty premise. Having put all of his eggs in the proverbial *Kokesh* basket, Defendant finds himself bereft of an alternative argument that might have, at the very least, slowed down the massive leak in his otherwise sinking ship. However, such is not the case here.

Based upon the foregoing analysis, the Court finds that an award of disgorgement in the amount of $261,911.18—such amount constituting a good faith approximation of Defendant's ill-gotten gains from his repeated insider trading activities—is proper based upon the entire record in this case.

## B. Prejudgment Interest

### 1. Applicable Law

"Like the decision to grant disgorgement and the decision about the amount of disgorgement, the decision whether to award prejudgment interest is left to the Court's broad discretion." *S.E.C. v. Miller*, 744 F. Supp. 2d 1325, 1343 (N.D. Ga. 2010) (citing *First Jersey*, 101 F.3d at 1476). The primary purpose behind an award of prejudgment interest is "to deprive the wrongdoer of the benefit of holding the illicit gains over time by reasonably approximating the cost of borrowing such gain from the government." *S.E.C. v. Contorinis*, 743 F.3d 296, 308 (2d Cir. 2014). Thus, [r]equiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity." *S.E.C. v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). "[T]he amount on which a violator must pay prejudgment interest usually tracks the amount that the party is ordered to disgorge. Whether or not a party personally enjoyed the gains from the illegal action does not alter this principle[.]" *Contorinis*, 743 F.3d at 308.

"When the SEC itself orders disgorgement . . . the interest rate it imposes is generally the IRS underpayment rate . . . [which] reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud. Accordingly, courts have approved the use of the IRS underpayment rate in connection with disgorgement." *First Jersey*, 101 F.3d at 1476; *see S.E.C. v. Yun*,

148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001) (same); *see also* 26 U.S.C. § 6621(a)(2) (defining the IRS underpayment rate as the Federal Reserve short term interest rate plus three percentage points). "The time frame for the imposition of prejudgment interest usually begins with the date of the unlawful gain and ends at the entry of judgment." *Yun*, 148 F. Supp. 2d at 1293 (citing *First Jersey,* 101 F.3d at 1477).

### 2. Analysis

The Huddleston Declaration states that the SEC has "caused prejudgment interest to be calculated on the amounts of disgorgement atrributable to trades within five years of the date this action was filed" and that the amount arrived at was calculated using "a prejudgment interest calculator program" which is "available to all employees of the SEC's Division of Enforcement."  Huddleston Decl. ¶ 11.  The SEC has attached its prejudgment interest calculation for the Court's review.  *See id.*, Ex. B.  As per standard practice, the SEC's prejudgment interest calculation "uses the interest rate used by the [IRS] for unpaid balances." *Id.* ¶ 12.  A review of the SEC's Prejudgment Interest Report (the "Report") shows a prejudgment violation range of August 1, 2010 through June 30, 2018 which, on a principal amount of $261,911.18 (the total disgorgement amount), results in a total quarterly interest amount of $81,336.14.  *See id.*, Ex. B.

Defendant takes no issue with the SEC's interest calculation itself.  Rather, Defendant "generally objects to the imposition of prejudgment interest on any penalty in the form of disgorgement" and, in any event, "objects to imposition of

any prejudgment interest after September 30, 2013" since, in his view, "[t]here is no reason that the SEC could not have resolved the issue of disgorgement and civil penalties by that time[.]"  Def.'s Opp'n at 6-7.  In its reply, the SEC takes the position that Defendant's argument is baseless since "it was defendant's decision to contest the imposition of disgorgement and prejudgment interest that extended those issues beyond the date on which he agreed to consent to a permanent injunction" and that "[h]ad he resolved the entire case at that point, the prejudgment interest would have been much less."  Plaintiff's Reply to Defendant Eric M. Martin's Response to Plaintiff's Amended Motion for Disgorgement, Prejudgment Interest, and Civil Penalties ("Pl.'s Reply") at 5-6.

Initially, the Court points out that Defendant's objection concerning the imposition of prejudgment interest is grounded on the faulty premise that disgorgement is being imposed as a penalty rather than as restitution.  Not so.  As the Court has already opined, disgorgement jurisprudence has not experienced a wholesale transformation in the wake of the Supreme Court's *Kokesh* decision, which is the basis for Defendant's characterization that disgorgement is tantamount to a penalty.  While *Kokesh* certainly left open the possibility that the Supreme Court, in a future case, may rule that disgorgement must be characterized as a penalty for all purposes—and not just for the narrow purpose of calculating the statute of limitations—that day has not yet arrived.  Until then, disgorgement retains its primary purpose of divesting those who violate the securities laws from their ill-gotten gains so that they cannot profit from their

own wrongdoing.   Thus, Defendant's objection to imposition of prejudgment interest on this theory is without merit.

Defendant next takes aim at the overall timeframe of the SEC's prejudgment interest calculation.  Per the Consent, Defendant agreed that he shall "pay prejudgment interest [on any disgorgement amount] calculated from July 28, 2010[.]" Consent ¶ 4.  While Defendant did not agree to a final date for imposition of interest, as stated above, typically "[t]he time frame for the imposition of prejudgment interest usually begins with the date of the unlawful gain and ends at the entry of judgment." *Yun*, 148 F. Supp. 2d at 1293.  Defendant has failed to come forward with any evidence corroborating his assertion that the delay in moving this case to judgment lies solely at the feet of the SEC.  Rather, he merely presents argument, which is not evidence and cannot be considered by the Court as such.  However, on the flip side, the SEC has not produced any factual evidence of Defendant's stonewalling which necessitated an approximate five-year delay in wrapping this case up.  Indeed, Plaintiff, like Defendant, merely offers argument that Defendant and Relief Defendant dug in their heels in hopes of minimizing their overall exposure.  *See* Pl.'s Reply at 6-7.

Given the dearth of evidence in the record concerning the approximate five-year time gap between Defendant's execution of the Consent and June 30, 2018 (the final date for which the SEC seeks application of prejudgment interest), the Court, on March 19, 2019, conducted a conference call with all parties.  *See* (Doc. 53).  During this conference, the Court candidly asked the SEC why it had

16

waited "until 2018 . . . to file its motion[ ]  . . . when the [SEC] had reached [a] consent order[ ] as to the mechanism of such in 2013[.]" Tr. at 2.  In response, the SEC stated that it "d[id] not have an explanation that covers that delay" and otherwise conceded that "[i]t [was] purely [the SEC's] fault for allowing [it] to rest on the back burner." *Id.*  While the Court noted that it "appreciate[d] [the SEC's] forthrightness" it also pointed out that the SEC's delay in bringing this case to a conclusion "has some implication in terms of the interest amounts and how we proceed on that . . . [since] it would have been reasonably anticipated . . . that . . . this was going to move [ ] in somewhat greater speed than it did[.]" *Id.*

In light of the SEC's concession as to the overall delay here, the Court finds no valid basis in equity to abide by the standard practice of imposing prejudgment interest beginning with the date of the unlawful gain through the entry of judgment (or alternatively the end date requested by the SEC).  Rather, on these particular and unique facts—which clearly lay the fault of the delay at Plaintiff's feet—a much shorter duration of prejudgment interest is appropriate. In that regard, Defendant does not object to prejudgment interest calculated through September 30, 2013.  Def.'s Opp'n at 6.  In addition, the Consent was fully executed as of August 22, 2018 and the Court finds no reason why the SEC could not have filed the instant motion by September 30, 2018 had it exercised due diligence in this regard.  Thus, the Court finds that equity would be best served with the imposition of prejudgment interest calculated from August 1, 2010 through September 30, 2013.  Turning to the prejudgment interest

calculations provided by the SEC, prejudgment interest on the principal amount ($261,911.18) for the aforementioned timeframe totals $28,646.14.

Based upon the foregoing analysis, quarterly prejudgment interest from August 1, 2010 through September 30, 2013 shall be imposed. This amount totals $28,646.14.

### C. Liability of Relief Defendant

#### 1. Applicable Law

"A relief defendant, sometimes referred to as a 'nominal defendant,' has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief." *S.E.C. v. Sun Capital, Inc.*, No. 209-CV-229-FTM-29SPC, 2009 WL 1362634, at *1 (M.D. Fla. May 13, 2009) (internal citation omitted). "Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *Cavanagh*, 155 F.3d at 136; *see Contorinis*, 743 F.3d at 307-08 (noting that since "disgorgement is designed to equitably deprive those who have obtained ill-gotten gains of enrichment, it may be imposed upon innocent third parties who have received such ill-gotten funds and have no legitimate claim to them."); *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) ("District courts may only require disgorgement of the assets of a relief defendant upon a finding that she lacks a 'legitimate claim.'"); *S.E.C. v. Sun Capital, Inc.*, 2009 WL 1362634, at *1. Thus, "[w]hen

there has been no consideration given for the receipt of the ill-gotten gains, there is no legitimate claim to the funds and a relief defendant must return the proceeds." *S.E.C. v. Aimsi Techs., Inc.*, 650 F. Supp. 2d 296, 304 (S.D.N.Y. 2009).

### 2. Analysis

The SEC requests that Relief Defendant be found "jointly and severally liable for $254,926.18[6] of the total ill-gotten profits ($261,911.18). Pl.'s Mem. at 17. In order to determine whether the Relief Defendant should be required to disgorge this amount on a joint and several basis with Defendant, the relevant inquiry, as stated above, turns upon whether Relief Defendant both received the funds and lacked any legitimate claim to those funds. *See Contorinis*, 743 F.3d at 307-08.

Initially, the Court points out that Relief Defendant's entire argument in this regard is inapposite since it fails to address either prong of the inquiry. *See generally* Relief Defendant Robin A. Martin's Response to Plaintiff's Amended Motion of Disgorgement of Unjust Enrichment ("Rel. Def.'s Opp'n"). Rather, instead of addressing the relevant issues, Relief Defendant advances an argument based upon the Supreme Court's decision in *Kokesh*. However, the Court has already addressed and flatly rejected this argument (claiming that disgorgement is a penalty and it would therefore "be inequitable to apply such a penalty to a

---

[6]     This amount represents the total ill-gotten gains existing within the Relief Defendant's solely owned bank accounts as well as the Defendant and Relief Defendant's jointly held accounts. *See* Huddleston Decl., Ex. A.

third-party relief defendant who did not engage in any wrong-doing") in the context of Defendant's opposition to the SEC's request for disgorgement. *See* Rel. Def.'s Opp'n at 3-6; *supra* at 7-12 (addressing Defendant's argument based on *Kokesh* and rejecting it).  The Court need not spill any further ink concerning this issue.

Alternatively, Relief Defendant falls back on the position that the SEC's attempt to hold Relief Defendant "jointly and severally liable with [Defendant] for his portion of the ill-gotten gains is entirely without merit" since, Relief Defendant "has not been accused of any wrongdoing and is simply the innocent owner of certain accounts used by [Defendant] without her knowledge" and, therefore, "she cannot be held jointly and severally liable for her husband's misdeeds[.]"  Rel. Def.'s Opp'n at 7-8.  However, this argument is without merit since it conflates principles undergirding joint and several liability with respect to those defendants that are actually *charged* and *found guilty* of wrongdoing versus the entirely distinct scenario where an innocent third-party is named as a nominal defendant solely because she has received the fruits of another's wrongdoing and lacks any legitimate claim to the funds.  Indeed, Relief Defendant, in arguing that she was merely an "innocent owner" of bank accounts that Defendant "used" in furtherance of his insider trading scheme only underscores that she held the role of typical relief defendant subject to disgorgement.  To be sure, the "close relationship analysis" for which Relief Defendant advocates should be applied to this inquiry is inapposite since the

relevant questions are limited only to whether she received the funds and lacks any legitimate claim to those funds.  Significantly, Relief Defendant has not argued, let alone provided any substantiation, reflecting that the funds at issue were neither deposited into accounts of which she was either a sole or joint owner nor that she had a legitimate interest to these funds.

It is important to emphasize that

A nominal defendant is a person who can be joined to aid the recovery of relief without an [additional] assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation. Because a nominal defendant has no ownership interest in the funds at issue, once the district court has acquired subject matter jurisdiction over the litigation regarding the conduct that produced the funds, it is not necessary for the court to separately obtain subject matter jurisdiction over the claim to the funds held by the nominal defendant; rather, the nominal defendant is joined purely as a means of facilitating collection. In short, a nominal defendant is part of a suit only as the holder of assets that must be recovered in order to afford complete relief[.]

*Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191–92 (4th Cir. 2002) (quotations and citations omitted).  Here, there is no question that Relief Defendant has not engaged in any wrongdoing—which is precisely the reason why she is named solely as a relief defendant in this case. However, it is also without question that she is the holder of assets for which she has failed to establish a legitimate interest and, as such, these assets must be recovered (jointly and severally with that recovered from Defendant himself) in order to ensure complete relief is achieved.

Based upon the foregoing analysis, the Court finds that Relief Defendant shall disgorge the amount of $254,926,18 on a joint and several basis with Defendant.  This amount reflects the total sum of illicit profits which were deposited in bank accounts either jointly or solely owned by Relief Defendant and for which she has no legitimate claim.

IV.   CONCLUSION

In light of the Court's analysis, Plaintiff's motion [Doc. 42] is hereby **GRANTED**, **in part**.  Specifically, the Court finds as follows: (1) **DEFENDANT IS DIRECTED TO DISGORGE** the principal amount of $261,911.18; (2) **DEFENDANT IS DIRECTED TO PAY PREJUDGMENT INTEREST** in the amount of $28,646.14; and (3) **RELIEF DEFENDANT IS HEREBY DIRECTED TO DISGORGE** the amount of $254,926.18 on a joint and several basis with Defendant.

The SEC shall supply both Defendant and Relief Defendant's counsel with all necessary information in order to facilitate the timely payments of the disgorgement and prejudgment interest amounts as set forth in this in Order. The Clerk's Office is **DIRECTED** to close this case.

**SO ORDERED** this 26th day of March, 2019.

**Amy Totenberg**
**United States District Judge**

22